USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/08/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                   :

 CF GLOBAL TRADING, LLC,                :

                     :

                 Petitioner,      :         13 Civ. 766 (KPF)

                     :

          -v.-                 :      OPINION AND ORDER

                     :

JOHN WASSENAAR,                  :

                     :

                 Respondent.    :

                     :

------------------------------------------------------------------ X

KATHERINE POLK FAILLA, District Judge:

       Petitioner CF Global Trading, LLC ("Petitioner" or "CF Global"), petitions this Court pursuant to Section 10 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), to vacate, in part, a Financial Industry Regulatory Authority ("FINRA") arbitration award (the "Award") entered by a three-member panel (the "Panel") in favor of Respondent John Wassenaar ("Respondent" or "Wassenaar"). Respondent cross-petitions pursuant to Section 9 of the FAA to confirm the Award in its entirety. For the reasons set forth in the remainder of this Opinion, Petitioner's petition to vacate is denied; Respondent's cross-petition to confirm is granted; and Respondent's related request for attorneys' fees and costs incurred in bringing his cross-petition is granted in part.

## FACTUAL BACKGROUND[1]

### A.      Respondent's Employment with Petitioner

Petitioner CF Global is a broker-dealer, registered with the Securities and Exchange Commission ("SEC") and a member of FINRA, with its principal place of business located in New York City.  (Petition to Vacate ¶ 2).  Respondent Wassenaar is a financial advisor and FINRA-registered representative domiciled in Toronto, Ontario, Canada.  (Petition to Vacate ¶ 3; Petition to Confirm ¶ 5).  Respondent was first employed by Petitioner from March 2001 to November 2004 as a trader in Petitioner's New York City office.  (Pet. Exh. B at 2).  Respondent then returned to Petitioner in or around February 2007, in connection with the parties' agreement to open an office in Toronto for which Respondent would be the sole employee engaged in certain trading activities.  (*Id*. at 2-3).  Respondent remained in this position at Petitioner's Toronto office until March 25, 2011, when he was terminated.  (Petition to Confirm ¶ 4).

The circumstances of Respondent's termination from Petitioner are hotly contested.  Respondent maintains that Petitioner terminated his position without

[1]      The facts are drawn from Petitioner's Petition to Vacate Arbitration Award (the "Petition to Vacate"), and the accompanying exhibits thereto ("Pet. Exh.") (Dkt. #1); the Memorandum of Law in Support of Petitioner's Petition to Vacate the Arbitration Award ("Pet. Br.") (Dkt. #4); the Answer to Petition to Vacate Arbitration Award (the "Answer") and Counterclaim Petition to Confirm Arbitration Award (the "Petition to Confirm"), and the accompanying exhibits thereto ("Resp. Exh.") (Dkt. #7); the Memorandum of Law in Support of Counterclaim Petition to Confirm Arbitration Award and Response to Petition to Vacate Arbitration Award ("Resp. Br.") (Dkt. #6); the Reply Memorandum in Support of Petitioner's Petition to Vacate the Arbitration Award ("Pet. Reply Br.") (Dkt. #13); and the FINRA Arbitration Award for Case Number 11-03222 (the "Award"), included as Exhibit A to both the Petition to Vacate (Dkt. #1-1) and the Petition to Confirm (Dkt. #7-1).

cause because its Toronto office was not sufficiently profitable and it did not want the risk of operating an office in the Canadian financial market.  (Pet. Exh. B at 7).  Petitioner counters that Respondent was terminated for cause for failing to conduct his "primary duties as a sales trader" and for violating the "firm's communication policy."  (Resp. Exh. B at 6).[2]

## B.    The FINRA Arbitration

As a former registered representative of Petitioner, Respondent was required to "arbitrate any dispute[,] claim or controversy that may arise between" the parties before a FINRA arbitration panel.  (*See* Form U-4 Disclosures to Associated Persons (Resp. Exh. C)).  Accordingly, on or about August 19, 2011, Respondent instituted an arbitration proceeding before FINRA against Petitioner for payment in lieu, breach of contract, wrongful dismissal, defamation, and fees and costs related to his termination from Petitioner.  (Petition to Confirm ¶ 6; *see also* Resp. Exh. D).  Significantly for purposes of the present petitions, the parties delivered written agreements submitting the matter to arbitration before FINRA, pursuant to which the parties agreed that: (i) "the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure"; (ii) the parties would be "bound" by the FINRA procedures and rules; and (iii) "a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby

---

[2]    The significance of this dispute, as explained by Respondent, is that if Petitioner terminated Respondent without cause, it would be obligated to compensate him, while if the termination was for cause, no compensation would be required.  (Pet. Exh. B at 7).  This Court need not (and will not) determine whether Respondent was terminated for cause in order to resolve the pending petitions.

voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment." (Resp. Exh. F).

### 1.      The Parties' Pre-Hearing Submissions

In a Statement of Claim filed with FINRA, Respondent sought damages, relief associated with his claims related to his termination from Petitioner, and "[s]uch further and other relief as [the] Panel may deem just." (Pet. Exh. B at 18-19). Respondent did not explicitly request attorneys' fees. (*See id*.). Petitioner filed its Answer to the Statement of Claim on November 28, 2011, denying all of Respondent's allegations. (Petition to Vacate ¶ 8; Resp. Exh. C). Petitioner likewise did not seek attorneys' fees in its Answer. (Resp. Exh. C).

Prior to the arbitration hearing, the issue of whether New York law or Ontario law would apply to Respondent's claims was raised; the parties then addressed the issue in pre-hearing submissions to the Panel. (Petition to Confirm ¶ 8).[3] In its submission, Petitioner conceded that, with the exception of Respondent's claim for defamation, Ontario law should apply to the claims pending before the Panel. (Resp. Exh. G at 2-3). In his pre-hearing brief (the "Pre-Hearing Brief"), Respondent argued that Canadian law governed the resolution of his claims in arbitration. (*See, e.g.*, Resp. Exh. H at 35-49). He also, for the first time, announced that he was seeking "compensatory damages and attorneys' fees." (Resp. Exh. H at 2; *see also id*. at 42 (noting that "Wassenaar asks this Panel for …

---

[3]      The parties do not identify any agreement containing a choice of law provision that governed the arbitration proceeding or would govern the proceedings before this Court, and the Court presumes none exists.

attorneys['] fees," and, further, that "this panel should award Mr. Wassenaar

interest, attorneys' fees and costs for even having to prosecute this claim")).[4]

### 2. The Arbitration Proceeding and the Parties' Supplemental Briefs

The Panel convened the arbitration on November 13, 2012, and held hearings

on November 13-16, 2012, and December 13-14, 2012.  (Petition to Confirm ¶ 10).

The hearings were held in Buffalo and Albany, New York, pursuant to the FINRA

Code of Arbitration Procedure Rule 13213.  (Petition to Confirm ¶ 10).[5]   Rule 13213

provides:

> The Director will decide which of FINRA's hearing locations will be the
> hearing location for the arbitration.  In cases involving an associated
> person, the Director will generally select the hearing location closest to
> where the associated person was employed at the time of the events
> giving rise to the dispute, unless the hearing location closest to the
> associated person's employment is in a different state, in which case
> the associated person may request a hearing location in his or her
> state of employment at the time of the events giving rise to the dispute.

(Resp. Exh. I).  Buffalo, New York, was the closest hearing location to CF Global's

Toronto office.

---

[4]   Petitioner's assertion that Respondent did not assert attorneys' fees until the first day of
arbitration is refuted by the record.  (Petition to Vacate ¶ 11).  Respondent clearly asserted a
request for attorneys' fees in his Pre-Hearing Brief, and it matters not that Respondent did
not repeat this request in the "Prayer for Relief" section of his submission, as Petitioner
attempts to argue.  (*See* Petition to Vacate ¶ 10).

[5]   The FINRA rules referred to throughout this decision are set forth in the Code of Arbitration
Procedure for Industry Disputes, available at
http://www.finra.org/web/groups/arbitrationmediation/@armed/@arbion/documents/arbmed/
p117547.pdf, and the FINRA Dispute Resolution Arbitrator's Guide October 2013 Edition,
available at
http://www.finra.org/web/groups/arbitrationmediation/@armed/@arbtors/documents/
arbmed/p009424.pdf.

During the hearings, the Panel requested that Respondent provide it with Canadian precedent concerning defamation and attorneys' fees, with which request Respondent complied by submitting a supplemental brief dated December 11, 2012, prior to the completion of the arbitration proceeding.  (Petition to Confirm ¶ 11; Resp. Exh. K).  As to attorneys' fees, Respondent argued in his supplemental brief that Canadian statutes granted the Panel "wide discretion in awarding fees to a party."  (Resp. Exh. K at 5).  Respondent further contended that the Panel should award him attorneys' fees pursuant to the "English Rule" — under which costs and fees are awarded to the prevailing party — because Ontario was an English Rule jurisdiction.  (*Id.* at 5-7).  *See generally RLS Assoc., LLC* v. *United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 210 (S.D.N.Y. 2006) ("Under the English rule, the prevailing party can generally recover its attorneys' fees from the losing party.").

In contrast, Petitioner maintained that the "American Rule" should govern Respondent's claim for attorneys' fees because, under conflict of law rules, the law of the forum (i.e., New York) controlled the issue of attorneys' fees.  (Pet. Exh. G at 20).  Under the American Rule, "parties are ordinarily required to bear their own attorneys' fees — the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. and Care Home, Inc.* v. *West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2011); *see also id.* (noting that, under the American Rule, courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority").  Petitioner did not specify in its post-hearing brief what the American Rule required.  (*See* Pet. Exh. G at 20).  Rather, it only

6

maintained that the American Rule governed.  Petitioner did request — in the event that the Panel both determined that the English Rule governed and found in favor of Petitioner — that the panel award Petitioner attorneys' fees.  (*Id*. at 20-21). In this regard, Petitioner provided the Panel with a fee application seeking "fees totaling $190,854.68 and disbursements totaling $9,690.13."  (*Id*. at 21).

### 3.     The Panel's Decision

On January 14, 2013, the Panel issued its decision in favor of Respondent and against Petitioner on all claims.  On the specific issue of attorneys' fees, the Panel stated:

> In the Statement of Claim, [Respondent] requested attorneys' fees; [Petitioner] at the hearing, maintained that attorneys' fees and costs were not appropriate but submitted its fees and costs in the event the Panel disagreed with its position that attorneys' fees were not appropriate.  After due deliberation, the Panel granted [Respondent's] requests for attorneys' fees and costs.
>
> [Petitioner] is liable for and shall pay [Respondent] attorneys' fees in the amount of $150,840.75.   The Panel awarded attorneys' fees pursuant to Ontario law.
>
> [Petitioner] is liable for and shall pay to [Respondent] $9,306,22 for attorneys' expenses."

(Pet. Exh. A).[6]

### C.     The Instant Litigation

On February 1, 2013, Petitioner commenced this action by filing its Petition to Vacate Arbitration ("Petition to Vacate"), seeking to vacate only the Panel's

---

[6]     The Court presumes that the Panel did not issue an explained decision because one was not requested by the parties, in accordance with FINRA Rule 13904. The Court further understands that there is no transcript for the arbitration proceeding. (Pet. Reply Br. at 7).

award of attorneys' fees to Respondent.  (Dkt. #1).  Petitioner submitted its

Memorandum of Law in Support of its Petition to Vacate on February 6, 2013.

(Dkt. #4).  On April 5, 2013, Respondent answered the Petition to Vacate, and filed

a cross-petition seeking to confirm the Panel's Award in its entirety (the "Cross-

Petition").  (Dkt. #7).  Respondent supported its Cross-Petition with a memorandum

of law filed on the same day.  (Dkt. #6).  Petitioner submitted its reply on

May 3, 2013.  (Dkt. #13).

## DISCUSSION

## A.    Judicial Review of Arbitration Awards

The Second Circuit has "repeatedly recognized the strong deference

appropriately due arbitral awards and the arbitral process, and has limited its

review of arbitration awards in obeisance to that process."  *Porzig* v. *Dresdner,*

*Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).  This accords

with the notion that "[t]he value of arbitration lies in its efficiency and cost-

effectiveness as a process for resolving disputes outside the courts, and its tendency

to foster a less acrimonious process."  *Id*. at 139.  "To encourage and support the use

of arbitration by consenting parties," the Court "uses an extremely deferential

standard of review for arbitral awards."  *Id*.

The FAA creates "mechanisms for enforcing arbitration awards: a judicial

decree confirming an award, an order vacating it, or an order modifying or

correcting it."  *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 582 (2008)

(citing 9 U.S.C. §§ 9-11).  A court must grant a motion to confirm an arbitration

award unless the award "is vacated, modified, or corrected" under § 10 or § 11. *Id.*

(quoting 9 U.S.C. § 9). There are four statutory grounds for vacatur:

> (1)    where the award was procured by corruption, fraud, or undue means;
>
> (2)    where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

As a "'judicial gloss'" on the "'specific grounds for vacatur'" provided in Section 10(a), the Second Circuit has held that a court "may set aside an arbitration award if it was rendered in 'manifest disregard of the law.'" *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (quoting *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010)).[7] The Court's "review in this regard, however, is "highly deferential" to the arbitrators, and relief

---

[7]    The "manifest disregard" standard, first announced in *Wilko* v. *Swan*, 346 U.S. 427, 436-37 (1953), was later called into question in *Hall Street Assocs.*, 552 U.S. at 585 ("Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them."). However, after the Supreme Court expressly declined to consider the vitality of the manifest disregard standard in *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010), the Second Circuit has "continued to recognize that standard as a valid ground" for vacatur of an arbitration award. *Schwartz*, 665 F.3d at 452.

on such a claim is therefore "rare."  *STMicroelectronics, N.V.* v. *Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (quoting *Porzig*, 497 F.3d at 138). Consequently, a court "will not vacate an award because of 'a simple error in law or a failure by the arbitrators to understand or apply it' but only when a party clearly demonstrates 'that the panel intentionally defied the law.'"  *Id.* (quoting *Duferco Intern. Steel Trading* v. *T. Klaveness Shipping A/S*, 333 F.3d 383, 393 (2d Cir. 2003)).  Indeed, the Second Circuit maintains that "where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome."  *Id.* (quoting *Duferco*, 333 F.3d at 390).

To assess whether arbitrators manifestly disregarded the law, courts apply a two-prong test, both of which must be satisfied in order to vacate an arbitration award.  *See Westerbeke Corp.* v. *Daihatsu Motor Co.*, *Ltd.*, 304 F.3d 200, 209 (2d Cir. 2002).  First, the court considers "whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable."  *Id.* (internal quotations omitted).  Second, "[t]he arbitrator must appreciate the existence of [the] clearly governing legal principle but decide to ignore or pay no attention to it."  *Id.* (internal quotations omitted).  A "party moving to vacate an arbitration award has the burden of proof by clear and convincing evidence," *Zulworld Shipping, Inc.* v. *Prams Water Shipping Co., Inc.*, No. 11 Civ. 7597 (KBF), 2013 WL 2246913, at *2 (S.D.N.Y. May 16, 2013) (collecting cases), and "the

showing required to avoid confirmation is very high." *STMicroelectronics, N.V.,* 648 F.3d at 74; *Spector* v. *Torenberg*, 852 F. Supp. 201, 206 (S.D.N.Y. 1994) (same).

## B.   Application

### 1.   The Panel Did Not Manifestly Disregard the Law

Petitioner argues that the Panel manifestly disregarded the law when it awarded Wassenaar his attorneys' fees pursuant to Ontario law.  (Pet. Br. at 4).  In support, Petitioner contends as follows: The arbitration hearings took place in New York, thereby necessitating the Panel to apply New York's choice of law rules.  (*Id.* at 6).  Under New York's choice of law rules, it is "settled that the law of the forum is usually in control as to procedures[,] including remedies" such as attorneys' fees. (*Id.*).  New York follows the American Rule with regard to attorneys' fees, under which each party is to bear their own costs of litigation, and no party may recover attorneys' fees absent statutory authority or an express agreement between the parties.  (*Id.*).  Finally, the Panel was "well-aware" of the American Rule, and of its required application to the arbitration proceedings.  (*Id.* at 7).  Thus, at its essence, Petitioner's argument is simple — the American Rule applied to the award of attorneys' fees because the arbitration took place in New York, and the Panel, by not applying the American Rule, manifestly disregarded the law.

In contrast, Respondent maintains that the Panel's award of attorneys' fees was "correctly decided" because Ontario law, under which the English Rule is enforced, governed the arbitration.  (Resp. Br. at 2-3).  Respondent further argues that Petitioner cannot meet the very high burden of establishing manifest disregard

11

in the instant case because the English Rule was properly applied; New York procedural law was inapplicable; and Petitioner agreed to the application of the English Rule by its request for attorneys' fees.  (*Id*. at 6-15).

As demonstrated in the remainder of this section, Petitioner has not established that the Panel manifestly disregarded the law.  The American Rule was not "clearly applicable" to the arbitration, and even assuming it was, the Panel did not "appreciate the existence of this clearly governing legal principle [and then] decide to ignore it." *Westerbeke Corp.*, 304 F.3d at 209.  In this regard, it bears noting that Petitioner explicitly requested attorneys' fees if the Panel found in Petitioner's favor, and concluded that the English Rule applied.  While this request does not rise to the level of waiver, it does indicate that Petitioner considered the attorneys' fees issue to be a matter that was both arbitrable and not clearly resolved.  It is equally clear that Petitioner would not be claiming manifest disregard in the award of attorneys' fees had it prevailed at arbitration.  Petitioner cannot now have it both ways.

### i.      The American Rule Was Not Clearly Applicable to the Arbitration

"A legal principle clearly governs the resolution of an issue before the arbitrator if its applicability is obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Westerbeke Corp.*, 304 F.3d at 209 (internal quotations omitted).  The applicability of the American Rule, under which parties traditionally bear their own attorneys' fees, to

the arbitration was not "obvious and capable of being readily and instantly perceived" by the Panel.

Petitioner provides no authority to support its proposition that the law of the *arbitral* forum controls the remedies that an arbitrator may award.  Rather, the cases on which Petitioner relies (*see* Pet. Br. at 6-7) concern the application of the American Rule by courts, or involve situations in which the parties expressly chose New York law to govern their arbitration agreement.  *See, e.g.*, *Bensen* v. *Am. Ultramar Ltd.*, No. 92 Civ. 4420 (KMW) (NRB), 1997 WL 317343, at *1 (S.D.N.Y. June 12, 1997) ("This Opinion addresses the issues of damages and attorney's fees that were left open by stipulation of the parties until after the conclusion of the liability phase of the case."); *Tanges* v. *Heidelberg N. Am.*, 93 N.Y.2d 48, 51 (1999) ("This Court is asked, within the boundaries of a certification from the United States Court of Appeal for the Second Circuit, to answer the question of whether Connecticut General Statutes § 52-577a bars plaintiff's products liability lawsuit."); *Kilberg* v. *Northeast Airlines, Inc.*, 9 N.Y.2d 34, 37 (1961) (appeal from the dismissal in part of a complaint alleging claims for wrongful death); *In re Stewart Tabori & Chang (Stewart)*, 282 A.D.2d 385, 386 (N.Y. App. Div. 2001) ("The award of attorney's fees … was not authorized by the parties' agreement or by any statute or court rule, contrary to New York law, which the parties had expressly chosen to govern their agreement." (internal citations omitted)); *Cent. Laborers' Pension Fund* v. *Blankfein*, 931 N.Y.S.2d 835, 838 (N.Y. Sup. Ct. 2011) (plaintiff sought an order

dismissing a shareholder derivative action, and an award of attorneys fees and expenses pursuant to New York law).

In point of fact, one of the cases cited by Petitioner, *McLaughlin, Piven, Vogel Sec., Inc.* v. *Ferrucci*, specifically contemplates an arbitrator's authority to apply the law of a jurisdiction other than the forum state.  67 A.D.3d 405 (N.Y. App. Div. 2009).[8]  In that case, the Appellate Division, First Department, held that an arbitrator's award of attorneys' fees was not a manifest disregard of the law, even though the parties' agreement was governed by New York law, because it did not appear that the "arbitrators knew that New York law was controlling on the question of their authority to award attorney's fees."  *Id.* at 405-06.  In so holding, the court acknowledged that the parties "reasonably could have been understood to have taken the position before the arbitrators that they were free to choose to apply the law of a jurisdiction other than New York."  *Id.* at 406.  In the instant case, neither Petitioner nor Respondent identifies any agreement between the parties requiring the application of New York law to the arbitration proceeding.  This is yet further indication that the Panel did not feel compelled, and was not in fact compelled, to apply New York law.

---

[8]     This Court may consult rulings from New York State courts in arbitration matters.  *El Hoss Eng'g & Transp. Co.* v. *Am. Indep. Oil Co.*, 289 F.2d 346, 350 (2d Cir. 1961) ("Although we are not required to apply [New York] state law, it will not be amiss for us to consider it."); *First Interregional Equity Corp.* v. *Haughton*, 842 F. Supp. 105, 112 (S.D.N.Y. 2004) ("[T]he courts in this circuit may look to the logic of rulings of New York State courts in arbitration matters.").

Even assuming *arguendo* that New York law applied to the arbitration, the arbitrators would not have been required to apply the American Rule to resolve the attorneys' fees issue.  As the Second Circuit has recognized (and New York case law holds):

> Under New York law, arbitrators are not bound by principles of substantive law or legal procedure: An arbitrator "may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement.

*Cnty. of Nassau* v. *Chase,* 402 Fed. Appx. 540, 542 (2d Cir. 2010) (summary order) (quoting *Silverman* v. *Benmor Coats, Inc.*, 61 N.Y.2d 299, 308 (1984)); *see also Wachovia Sec., LLC* v. *Brand*, 671 F.3d 472, 479 (4th Cir. 2012) ("We similarly conclude that the Panel was not compelled to follow [South Carolina's Frivolous Civil Proceedings Act]'s procedural mandates insofar as Wachovia attempts to import them into this arbitration."); *cf. AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1740, 1750-51 (2011) (recognizing that it would be inconsistent with the FAA for one party to demand, *ex post*, particular procedural requirements from state law); *Silvester Tafuro Design, Inc.* v. *Sachs*, No. 99 Civ. 1271 (DC), 1996 WL 257668, at *4 (S.D.N.Y. May 16, 1996) ("[E]ven if the Contract did contain a New York choice of law provision, the issue of attorney's fees would still be arbitrable based on the broad arbitration provision contained in the Contract … ,[and thus defendant's] reliance on cases limiting an arbitrator's power based on state law provisions is misplaced.").

15

The Second Circuit's decision in *PaineWebber Inc.* v. *Bybyk*, 81 F.3d 1193 (2d Cir. 1996), is also instructive. The agreement between the parties in that case required "any and all controversies" to be submitted to arbitration before the NASD (the predecessor to FINRA), and further specified a New York choice of law provision. *Id.* at 1196. After the respondents attempted to institute an arbitration, the petitioner filed a state court proceeding seeking to enjoin the arbitration as untimely and to enjoin the respondents from pursuing any claims for punitive damages or attorneys' fees as barred by New York law. The respondents then removed the state court action to this District and moved to dismiss the petitioner's complaint. The district court granted the motion, concluding that these issues should be decided by the arbitrators, and the Second Circuit affirmed.

Of note, the Court rejected the argument that a New York choice of law provision (which is not even present in the instant case) foreclosed the arbitrators from considering the issue of attorneys' fees:

> The Agreement provides that "any and all controversies" shall be submitted to arbitration; there is no express limitation with respect to attorneys' fees. For reasons already stated, a choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act, including the right to arbitrate claims for attorneys' fees. Therefore, PaineWebber cannot rely on the New York choice-of-law provision to prevent the Bybyks from seeking in arbitration a remedy that is not foreclosed by the Agreement.

*Id.* at 1206 (citation omitted); *see also In re Arbitration Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Adm'rs*, 785 F. Supp. 2d 411, 422-23 (S.D.N.Y. 2011) ("Although AequiCap has cited authority in support of its argument that attorney's

fees are unauthorized under New York law, General Security points to ample authority that supports the Panel's decision and far exceeds the requirement that there be a barely colorable justification for the Panel's outcome.  Accordingly, AequiCap cannot establish that the Panel was aware of and disregarded clear and applicable law; at best, AequiCap may be able to establish that the law was unclear, but misapplication of unclear or ambiguous law cannot, by definition, be the basis for vacating an arbitration award on the grounds of manifest disregard.").

In the absence of an agreement between Petitioner and Respondent requiring the application of the American Rule, or any other statute or rule requiring the same, the Court cannot conclude that the Panel acted in manifest disregard of the law by awarding attorneys' fees using Ontario law.  This is particularly true where the Panel applied the law of Respondent's residence, where Petitioner had maintained its office, and where the facts giving rise to the claims pending before the Panel occurred.  It was, therefore, entirely foreseeable to Petitioner that it may be subject to Ontario law.

### ii.     The Arbitration Was Governed by FINRA's Procedures and Rules

Petitioner's claim that New York procedural law, and thus the American Rule, governed the arbitration is also belied by the record.[9]  Petitioner and

---

[9]     The parties spend considerable effort disputing whether the English Rule is procedural or substantive.  Because this issue is not dispositive of whether the Panel manifestly disregarded the law in this case, the Court need not resolve the issue.  In any event, courts have taken differing views on whether the English rule should apply over the American rule in court proceedings, thereby further demonstrating the lack of any well-defined, explicit, and clearly applicable law that could have been manifestly disregarded by the Panel.

Respondent agreed to be "bound" by "the procedures and rules of FINRA relating to arbitration." (Resp. Exh. F).  *See generally PaineWebber Inc.*, 81 F.3d at 1201 ("Certainly, the [FINRA] Code may govern a dispute once it is actually in arbitration before [a FINRA] arbitration panel.").  Those rules explicitly contemplate that the Panel could award attorneys' fees.

Specifically, FINRA's rules and procedures provide that the Panel may "award damages and other relief requested," (Code of Arbitration Procedure for Industry Disputes Rule 13904), and instruct arbitrators that attorneys' fees may be awarded where "all of the parties request … such fees."  (FINRA Dispute Resolution Arbitrator's Guide October 2013 Edition at 59).  Respondent sought attorneys' fees in his Pre-Hearing Brief (Resp. Exh. H at 2, 42), and Petitioner sought (albeit in the alternative) attorneys' fees in its Post-Hearing Brief, and even submitted a fee application in support of its request.  (Pet. Exh. G at 21).  The Panel's decision notes these very facts:

---

*Compare RLS Assocs., LLC*, 464 F. Supp. 2d at 219 (stating that "the English rule should be considered substantive under New York's common law framework for substance and procedure," and holding that the prevailing party in the litigation was entitled to recover attorney fees), *and In re Tyson*, 433 B.R. 68, 97 (S.D.N.Y. 2010) ("New York's choice-of-law principles would treat the English rule regarding attorney's fees as substantive, not procedural, and thus where English law governs a given cause of action, so too should the English rule regarding attorney's fees."), *with Bensen*, 1997 WL 317343, at *15 ("[W]e are convinced that a New York court would not import the English rule to award attorney's fees when they would not otherwise be available.  A New York court would consider the application of the American rule to be a fundamental component of the state's procedural law, and would apply it in the interests of predictability, fairness, and efficient judicial administration."), *and Conte* v. *Flora Mercante Del Estado*, 277 F.2d 664, 668 (2d Cir. 1960) (applying the American rule rather than the English rule where "the rights of the parties [were] governed by Argentine law").

> In the Statement of Claim, [Respondent] requested attorneys' fees; [Petitioner] at the hearing, maintained that attorneys' fees and costs were not appropriate but submitted its fees and costs in the event the Panel disagreed with its position that attorneys' fees were not appropriate.  After due deliberation, the Panel granted [Respondent's] requests for attorneys' fees and costs.

(Pet. Exh. A).  The Panel thus appears to have concluded that because both parties had addressed the issue of — and, indeed, sought — attorneys' fees, the Panel was properly vested with authority to award such fees.  This conclusion is consistent with case law, and it has been upheld in the face of similar efforts to vacate a purportedly improper attorneys' fees award, even under New York State law.  *See Synergy Gas Co.* v. *Sasso,* 853 F.2d 59, 64 (2d Cir. 1988) (denying appeal to vacate arbitration award of attorneys' fees, where the parties stipulated submission provided for the arbitrator to decide whether to award such fees); *Schaad* v. *Susquehanna Capital Grp*, No. 03 Civ. 9902 (LTS) (DFE), 2004 WL 1794481, at *6 (S.D.N.Y. Aug. 10, 2004) (denying respondent's petition to vacate the attorneys' fees award where respondent requested attorneys' fees in its pre-hearing submissions); *Spector*, 852 F. Supp. at 211 (holding "that the arbitrators acted within their authority in awarding attorney's fees," where petitioners requested attorneys' fees in their demand for arbitration and their post-hearing briefs); *Bear Stearns & Co., Inc.* v. *Fulco*, 21 Misc.3d 823, 830-31 (N.Y. Sup. Ct. 2008) (finding no manifest disregard in award of attorneys' fees by arbitrators, noting that (i) parties had each sought attorneys' fees, even though one party later tried to disclaim that request, (ii) underlying arbitration agreement did not contain a New York choice of law

clause, and (iii) "the arbitrators also may have found that the parties agreed to arbitrate the issue of attorneys' fees by virtue of their broad agreement to arbitrate 'all controversies' and based on their execution of uniform submission agreements agreeing to arbitration in accordance with the NASD rules"); *In re Goldberg* v. *Thelen Reid Brown Raysman & Steiner LLP*, 52 A.D.3d 392, 392-93 (N.Y. App. Div.) ("[M]utual demands for counsel fees in an arbitration proceeding constitute, in effect, an agreement to submit the issue to arbitration, with the resultant award being valid and enforceable."), *lv. appeal denied*, 11 N.Y.3d 749 (2008).

In its pre-hearing submission, Petitioner submitted to the Panel the choice of law issue, i.e., whether New York or Ontario law would apply to Respondent's claims.  (Resp. Exh. G at 2-3.)  Later, in its post-hearing supplemental brief, Petitioner submitted to the Panel the issue of whether the Panel could award attorneys' fees.  (Pet. Exh. G at 20.)  Consequently, Petitioner's burden is "even more stringent" here, where Petitioner "seeks to vacate an arbitration award based on manifest disregard as to an issue that [P]etitioner admits was properly," albeit implicitly, "submitted to arbitration." *Fahnestock & Co.* v. *Walthman*, 935 F.2d 512, 515 (2d Cir. 1991).  Petitioner cannot meet this burden.  Indeed, courts have rejected challenges to vacate an arbitration award where arbitrators awarded attorneys' fees in cases governed by FINRA's rules.  *See, e.g.*, *Schaad*, 2004 WL 1794481, at *6  (denying request to vacate an award of attorneys' fees, and stating "by agreeing to arbitrate before the NASD, [the parties] agreed that the arbitration panel would be empowered to interpret and apply the NASD Code of Arbitration

Procedure as the arbitrators saw fit"); *Intercity Co. Establishment* v. *Ahto*, 13 F. Supp. 2d 253, 264 (D. Conn. 1998) (denying a request to vacate an award of attorneys' fees where the parties agreed to be bound by the NASD Code of Arbitration Procedure that provided that the "arbitrators may award damages and other relief").

### 2.   There Was No "Clearly Governing Legal Principle" That the Panel Appreciated and Decided to Ignore

"A party seeking vacatur must [] demonstrate that the arbitrator knew of the relevant principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Westerbeke Corp.*, 304 F.3d at 217.  "It is not enough that the moving party provide proof that the arbitrator was aware of the governing legal principle; there must be a specific showing of intent."  *Id*.

Petitioner argues that the "Panel was well-aware that the 'American Rule' existed and that it should apply to the arbitration."  (Pet. Br. at 7).  In light of the Court's finding that application of the American Rule to the arbitration was not a foregone conclusion (and, by extension, not a "clearly governing legal principle"), the Panel could not have decided to ignore it.  Even assuming, however, that the American Rule clearly governed the award of attorneys' fees at the arbitration, Petitioner has failed to demonstrate either that the Panel appreciated that this rule controlled the outcome of the disputed issue or that the Panel "willfully flouted the governing law by refusing to apply it."  Indeed, Petitioner's own request for

attorneys' fees demonstrates that it, too, understood that the American Rule may not have controlled the outcome.

### 3. The Arbitration Award Must Be Confirmed

As noted, the FAA requires that, if the parties agreed that a judgment may be entered upon an arbitration award, a court must enter an order confirming the arbitration award unless one of the statutorily specified grounds for vacatur is found to exist. 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration … the court must grant [a request for an order confirming the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."); *Hall Street Assoc., L.L.C.*, 552 U.S. at 587 ("On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.' There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." (quoting 9 U.S.C. § 9)).

The parties agreed that a judgment on the Award may be entered by this Court. (Resp. Exh. F). Because the Court finds that (i) the Panel's award of attorneys' fees should not be vacated on manifest disregard grounds; (ii) Petitioner has not asserted any other ground for vacatur; and (iii) the Court has not found that any other basis for vacatur exists, the Court must confirm the Award. *See Scandinavian Reinsurance Co. Ltd.* v. *Saint Paul Fire and Marine Ins. Co.*, 668

F.3d 60, 78-79 (2d Cir. 2011) ("[Petitioner] has identified no basis other than the asserted evident partiality for vacating the Award under the FAA or New York Convention.  Because we conclude that evident partiality was absent, [Respondent's] cross-petition to confirm the Award must be granted.").

### 4. Respondent Is Entitled to Costs, But Not Attorneys' Fees, In Connection With This Motion

Respondent requests attorneys' fees incurred in connection with this proceeding.  (Petition to Confirm at 11).  Petitioner opposes.  (Pet. Reply Br. at 7-8).  Respondent fails to "specify the judgment and the statute, rule, or other grounds entitling" him to an award of attorneys' fees, Fed. R. Civ. P. 54(d)(2), and as Respondent is now well aware, "[u]nder the prevailing American rule, in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award."  *Int'l Chem. Workers Union (AFL-CIO), Local No. 227* v. *BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (citing *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).  Without any authority instructing the award of attorneys' fees here, this Court declines to do so.  *Aioi Nissay Dowa Ins. Co. Ltd.* v. *ProSight Specialty Mgmt. Co., Inc.*, No. 12 Civ. 3274 (JPO), 2012 WL 3583176, at *4 (S.D.N.Y. Aug. 21, 2012) (denying request for attorneys' fees where Fed. R. Civ. P. 54(d)(2) was not satisfied and where petitioner did "not identify any basis on which to depart from the default rule that 'a prevailing party is ordinarily not entitled to attorneys' fees except when expressly provided by statute or contract'" (quoting *In re Arbitration Between Westchester Fire*

*Ins. Co.* v. *Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005)));
*see also Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.* v. *Odyssey Am. Reinsurance
Corp.*, No. 05 Cv. 7539 (DAB), 2009 WL 4059183, at *8 (S.D.N.Y. Nov. 18, 2009)
(denying request for attorneys' fees on a motion to vacate in the absence of statutory
authority for the award and where counsel did not act in "bad faith, vexatiously,
wantonly, or for oppressive reasons").

Respondent also requests costs incurred in connection with the instant
proceeding (Petition to Confirm at 11), which request Petitioner likewise opposes
(Pet. Reply Br. at 8).  Respondent may be awarded costs pursuant to Federal Rule of
Civil Procedure 54(d)(1), under which "costs — other than attorney's fees — should
be allowed to the prevailing party."  An award of costs "against the losing party is
the normal rule obtaining in civil litigation, not an exception."  *Natural Organics,
Inc.* v. *Nutraceutical Corp.*, No. 01 Civ. 0384 (GBD) (RLE), 2009 WL 2424188, at *2
(S.D.N.Y. Aug. 6, 2009).  Finding no reason not to do so, the Court grants
Respondent's request.  *See Ometto* v. *ASA Bioenergy Holding A.G.*, No. 12 Civ. 1328
(JSR), 2013 WL 174259, at *7 (awarding the respondent costs incurred in the
proceeding before the Court); *Aioi Nissay Dowa Ins. Co. Ltd.*, 2012 WL 3583176, at
*4 (same).

## CONCLUSION

For the forgoing reasons, Petitioner's petition to vacate is DENIED, Respondent's cross-petition to confirm is GRANTED, Respondent's request for attorneys' fees incurred in connection with this proceeding is DENIED, and Respondent's request for costs incurred for same is GRANTED. The arbitral award is confirmed.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:        October 8, 2013
              New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge